IN THE UNITED STATES DISRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PHILLIP MICHAEL ERAVI; | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:24-CV-4042 |
| vs. | ) | |
| | ) | |
| DAVID McSHANE; MEAGAN SHIPLEY; | ) | |
| GRANT FOSTER; AUSTIN TWITE, | ) | |
| in their individual capacities; and | ) | |
| THE LAWRENCE CITY COMMISSION, | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
THE LAWRENCE CITY COMMISSION'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR FAILURE TO STATE A CLAIM**

## I. INTRODUCTION

Plaintiff's Complaint does not contain facts that support a cause of action against the Lawrence City Commission[1] ("City") and dismissal is warranted. Plaintiff's claims arise out of his May 20, 2023, felony arrest, and he seeks to hold Defendant City liable pursuant to 42 U.S.C. § 1983 for a violation of his rights under the First Amendment and for negligent failure to train and supervise certain Lawrence Police officers. The Complaint does not comply with Rule 8, which warrants dismissal. Additionally, Plaintiff does not allege any facts that an official policy was in place that was improper or caused a violation of his constitutional rights, nor does the Compliant show any connection between a City policy and any alleged constitutional violation. Plaintiff's Complaint (Doc. 1) fails to state a claim upon which relief may be granted against the City and it must be dismissed pursuant to Rule 12(b)(6).

## II. STATEMENT OF FACTS

All facts are not restated herein as they are not necessary for the evaluation of the City's Motion to Dismiss. The City strongly disputes the majority of the facts alleged in the Complaint and if the Motion

---

[1] Plaintiff's claims against the "Lawrence City Commission" is merely another way of pleading an action against the entity of which the individual defendant is an agent. *Stewart v. City of Prairie Village, Kansas*, 904 F. Supp.2d 1143, 1161 (D. Kan. 2012) (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

4951742

to Dismiss is not granted, the City reserves the right to dispute the same through discovery. In her Order granting Defendant's Motion to Dismiss in *Eravi v. City of Lawrence, Kansas*, Case No. 5:23-cv-04109-JAR, 2024 WL 3360447 (D. Kan. July 9, 2024) ("*Eravi* 1") Judge Robinson succinctly summarized the factual allegations contained in the current Complaint, and the following facts largely follow her summary of which this Court may take judicial notice.

Plaintiff alleges that, in the late evening of May 19, 2023, there was a shoot-out between neighbors in the 1900 block of Heatherwood Drive—a populated residential neighborhood. (Doc. 1, ¶ 54). "Defendants" responded at 10:37 p.m., and treated it as an active shooter scene. *Id.* Defendants learned that a person was injured and provided aid at the scene, and believed that an armed shooter was inside of the home located at 1951 Heatherwood Drive. *Id.* ¶ 55. The Lawrence Police Department ("LPD") deployed a Critical Response Team ("CRT") to deal with the active shooter. *Id.* ¶ 56. The CRT used an armored vehicle and a loudspeaker to communicate with the suspect inside the residence, and tried to persuade the suspect to surrender. *Id.* After several hours without a response from the suspect, officers entered the residence and apprehended the shooter in the early morning hours of May 20, 2023. *Id.* ¶ 57. The suspect was later identified as Joshua Townsend, who was armed upon arrest. *Id.*

Plaintiff was present at the scene in his capacity as a citizen journalist, positioned across the street from Townsend's house and on private property. *Id.* ¶¶ 37, 60. The residents of the neighborhood had not been evacuated, but were asked to shelter in place and stay indoors. *Id.* ¶ 61. Plaintiff did not think there was any danger at the scene because, when he approached the scene, there were no police present and no crime tape. *Id.* ¶ 64. Plaintiff alleges he was walking on public property when he was attacked by the police, without warning, and "forcefully moved around by the defendant officers using pain compliance tactics for thirty seconds before he was even informed he was under arrest." *Id.* ¶ 74. Defendant McShane previously told Plaintiff that he was free to walk, but then "suddenly without notice or warning, that same

officer then forcibly stopped, detained, and arrested him as Plaintiff moved back South parallel to the private property of the apartment[2]. *Id.* ¶ 78.

Plaintiff's citation to part of a recording from his interaction with officers on May 20, 2024, is that Defendant McShane told Plaintiff that he needed to get inside if he was a resident, or leave if he did not live in the neighborhood. *Id.* ¶ 111. Plaintiff alleges that Defendant McShane also told Plaintiff he was free to walk, but followed Plaintiff as he walked around the area, stating that he had "to cover" Plaintiff. *Id.* ¶ 126.  Plaintiff alleges, that when officers contacted dispatch about Plaintiff's presence at the active shooter crime scene, dispatch instructed officers to detain Plaintiff. *Id.* ¶ 111.

As a result of his actions, Plaintiff was arrested and the Douglas County District Attorney, on behalf of the State of Kansas, charged Plaintiff with a level 9 nonperson felony in violation of K.S.A. 21-5904(a)(3) & (b)(5)(A). *Id.* ¶ 205.

The LPD Policy Manual provides that members of the public who wish to record law enforcement activities are limited and may not interfere with the law enforcement activity by "being so close to the activity as to present a clear safety hazard to the officers." (Doc. 1, ¶ 183, LPD Policy 425.3(b)(3)). Plaintiff alleges that he did not present a safety risk to any officers and did not interfere with any officer's communications. (Doc. 1, ¶¶ 187, 188). Plaintiff alleges he was singled out for being on private property and prevented from engaging in a form of civil discourse. *Id.* ¶ 50.

Plaintiff claims that the Defendant Officers escalated to the third level of force without issuing clear verbal commands to Plaintiff and that there were no attempts to "safely engage in active communication and listening techniques" to de-escalate contact. *Id.* ¶ 260.  Plaintiff claims that the Defendant Officers were negligent in: failing to secure the scene and establishing a viable security perimeter; failing to protect Plaintiff and other citizens from entering and exiting the area; failing to effectively communicate with

---

[2] As Judge Robinson noted, Plaintiffs use of the words "public" and "private" is not consistent in the Complaint and it is difficult to establish the order of events because the Complaint "jumps around in time (i.e. it is unclear when Plaintiff arrived, when the police arrived, what kind of warning, if any, he received before arrest, etc.)." *Eravi,* 2024 WL 3360447 at *7, fn 40. See also (Doc. 1, ¶60), Plaintiff was on private property; contrasted with (Doc. 1, ¶74), walking on public property.

other agencies; failing to communicate internally at the scene; and failing to protect Plaintiff when he was forcibly detained. *Id.* ¶ 273.  Plaintiff claims that the City failed to train and supervise officers in how to handle Plaintiff's presence at the scene and failed to train officers on the City's Policy on recording police activity. *Id.* ¶¶ 283, 284.

## III.   MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint itself. *See MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Two working principles underlie this standard. 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' (citation omitted.) 'Thus, mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice; a plaintiff must offer specific factual allegations to support each claim.'" *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013). Second, a complaint must state a "plausible claim for relief" to survive a motion to dismiss. *Id.* (quoting *Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citation omitted). In making this determination, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## IV.    ARGUMENTS AND AUTHORITIES

### A.  <u>The Complaint Fails To Comply With Rule 8</u>

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of Rule 8 is to give a defendant fair notice of the claims against it." *Baker v. Blue Valley Sch. Dist. USD 229*, No. 221CV02210HLTTJJ, 2021 WL 2577468, at *4 (D. Kan. June 23, 2021) (citing *Schupper v. Edie*, 193 F. App'x 744, 745-46 (10th Cir. 2006)). "[I]t is not [the] job of the Court or the opposing party to sort through a pleading to try to construct a plaintiff's claims." *Id.*at *5. As the court noted in *Tonkovich v. Kansas Bd. of Regents*, 159 F. 3d 504, n.1 (10th Cir. 1998), Plaintiff's Complaint "is the antithesis of the 'short and concise' pleading requirement of Fed. R. Civ. P. 8(a)."

The Complaint begins with an "introduction" setting forth 8 pages of facts about Plaintiff's May 20, 2023 felony arrest.  Plaintiff then states the jurisdiction and venue of the case before continuing with another 35 pages of allegations about the May 2023 felony arrest.  The Complaint includes a multitude of screenshots from police body cameras, photographs Plaintiff took on the night of his arrest and aerial maps of the neighborhood.  The Complaint also refers to selected 'transcripts' of recorded conversations from the night of the arrest.  Plaintiff then asserts two causes of action against the City: (1) prior restraint and retaliatory policy of prohibiting the exercise of free speech; (2) negligent failure to train and failure to supervise under 42 U.S.C. 1983, and four causes of action against the "Defendant Officers." The Amended Complaint is replete with both argument and case law analysis, neither of which comply with Rule 8. "Failure to provide a short and plain statement that complies with Rule 8 is sufficient grounds to dismiss a complaint." *Baker* 2021 WL 2577468, at *4 (citing *Mann v. Boatright*, 477 F. 3d 1140, 1147-48 (10th Cir. 2007). Thus, Defendant City should be dismissed on this basis alone.

### B.  <u>Plaintiff's Complaint Does Not State a Claim against the City of Lawrence</u>.

Plaintiff's Complaint contains nothing beyond conclusory allegations against the City, which are insufficient to withstand this Motion to Dismiss. A local government does not answer for the injuries

"inflicted solely by its employees or agents," and is not subject to respondeat superior liability. *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978) *Monell*, 436 U.S. at 694. The City is not directly liable for the constitutional torts of its employees. *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (citing *Monell*, 436 U.S. at 694). A plaintiff may not assert a section 1983 action against a municipal entity unless he establishes that a government policy or custom caused his injuries.  *Galindo v. Taylor,* No. 22-2414-DDC-RES, 2024 WL 1116072, *5 (D. Kan. 2024) (referencing *Monell*, 436 U.S. at 690). That is, a municipality "may be held liable under *Monell* if it executes an unconstitutional policy or custom, or a facially constitutional policy that causes a constitutional violation." *Id.* (internal citation omitted). To establish municipal liability under § 1983 a plaintiff must show: "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). "A plaintiff may establish a municipal policy or custom by alleging facts capable of demonstrating one of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Galindo*, 2024 WL 1116072 at *6(internal quotation and citation omitted).

Although brought as two separate causes of action, Plaintiff's First and Sixth Causes of Action are simply two different attempts to establish a municipal policy or custom to state a 1983 claim against the City.  As detailed below, neither contain sufficient facts to support finding that a government policy or custom caused Plaintiff's injuries and dismissal as a matter of law is warranted for failure to state a claim against the City.

1.  The Complaint Does Not State A Claim for Prior Restraint and Retaliatory Policy of Prohibition of The Exercise of Protected Speech. (First Cause of Action).

Plaintiff's First Cause of Action centers entirely on the actions of City employees who prevented Plaintiff from walking through and around an active crime scene involving an active shooter. Plaintiff alleges that the Defendant Officers arrested him while he was video recording either from private property or public property. Specifically that "each defendant targeted" Plaintiff because of his "status and viewpoints" and to retaliate against and chill his speech. (Doc. 1, ¶ 191). Plaintiff further alleges that "each defendant" was motivated by improper considerations such as the desire to prevent the exercise of a constitutional right. *Id.* ¶ 192.  All of the factual averments in Plaintiff's First Cause of Action relate to actions of City employees, which is the exact conduct that *Monell* protects local governments from liability.

Plaintiff's allegation that the LPD Policy of recording law enforcement activity acted as a prior restraint to his ability to record police activity and it "allows officers to limit First Amendment conduct simply because the citizen is recording" (Doc. 1, ¶ 182) does not support a claim against the City. "[T]he Tenth Circuit has established that there 'is no general First Amendment right of access to all sources of information within governmental control[.]'" *Mocek v. City of Albuquerque*, 3 F. Supp. 3d 1002, 1069 (D.N.M. 2014) (citing *Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001)). "Further, the 'right to speak and publish does not carry with it the unrestrained right to gather information.'" *Id.* (citing *Zemel v. Rusk*, 381 U.S. 1, 16-17, 14 L.Ed.2d 179 (1965)). "[T]he Tenth Circuit recognizes 'no general First Amendment right to all sources of information within governmental control.'" *Id.* at 1069-1070 (citing *Smith*, 258 F.3d at 1178). The Complaint vacillates between whether Plaintiff was recording on public property or private property at the time of his arrest. Regardless of his location at the time of his arrest, regulation of First Amendment activity is examined on the basis of reasonableness. *United States v. Kokinda*, 297 U.S. 720, 726-727, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). "A reasonable restriction 'need not be the most reasonable or the only reasonable limitation,'" *Id.* (citing *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 120 L.Ed.2d 541 (1992)).

The right to record police activity is not absolute and may be limited to reasonable time, place and manner restrictions.  "It is well-settled that even in a public forum the government may impose reasonable restrictions on the time, place, and manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of information." *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1070 (10th Cir. 2020) (citations omitted). *See also, Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 379 (S.D.N.Y. 2015) ("All of the circuit courts that have [addressed the issue] ... have concluded that the First Amendment protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions.") (citations omitted)).

The LPD Policy regarding recording law enforcement activity states that members of the public who wish to record law enforcement activity are limited only in certain aspects, one of which is being so close to the activity as to present a clear safety hazard to the officers. (Doc. 1, ¶ 183).  The LPD Policy provides reasonable restrictions on recording law enforcement activity that are narrowly tailored and viewpoint neutral.  The LPD Policy that prevents recording when it interferes with law enforcement activity is constitutional, and there are no facts in the Complaint that the restrictions therein were not reasonable.

 Plaintiff fails to demonstrate any causal connection between the LPD Policy on recording law enforcement activity and any alleged violation of Plaintiff's First Amendment Rights. Beyond verbatim citation to the policy and conclusory allegations that he did not interfere with the officers' effective communications, Plaintiff offers no facts that the policy on recording was the reason for his arrest or an alleged violation of his constitutional rights.  Plaintiff concedes he was moving throughout the scene and thereafter arrested and charged with obstructing, resisting or opposing law enforcement officers in discharging their official duties. (Doc. 1, ¶ 205). The existence of the LPD Policy, does not equate to a violation of Plaintiff's constitutional rights or any pled causation thereof. Plaintiff fails to establish that the City policy on recording law enforcement activity caused his injuries.

4951742

At the end of his First Cause of Action, Plaintiff also attempts to claim municipal liability against the City because each of the Defendant Officers ratified and approved the decisions of removing and arresting Plaintiff by "failing to meaningfully investigate and punish the unconstitutional conduct." (Doc. 1, ¶ 195). Plaintiff contends that an inference of a policy or custom may be drawn from a failure to take remedial action after a constitutional violation.  These conclusory allegations fail to state a claim against the City because it is well settled that a failure to investigate or reprimand does not support finding a custom or policy for ratifying a constitutional violations. *Sigg v. Murphy*, No. 23-CV-02154-TC, 2024 WL 3677775, at *12 (D. Kan. Aug. 1, 2024); *See also, Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (failing to discipline an officer after an alleged constitutional violation is insufficient to establish a causal connection to that constitutional violation); *Lynch v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 786 F. App'x. 774, 787 (10th Cir. 2019) ("[f]ailing to adequately investigate or punish does not count as ratification"); *Kibbe v. Cty. of Springfield*, 777 F.2d 801, 809 n.1 (1st Cir. 1985) (holding failure to discipline a subordinate, without more, does not amount to ratification for purposes of municipal-policy liability).

There are no facts in the Compliant that give rise to an inference that the LPD Policy on recording law enforcement activities demonstrates that the City established a deliberate policy or custom to violate the constitution. Plaintiff's "threadbare recitals" do not give rise to a cause of action." *Ashcroft*, 556 U.S. at 678.

2.  The Complaint Does Not State A Claim under §1983 for Failure to Train/Supervise (Sixth Cause of Action).

To find a municipal policy or custom based on a failure to train or failure to supervise theory, a plaintiff is required to show deliberate indifference. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197 (1989). "That a particular officer may be *unsatisfactorily trained will not alone suffice to fasten liability* on the

city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 391 (emphasis added) (internal citation omitted). Additionally, it will not suffice "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.*

"[T]he failure to train must 'reflect a deliberate or conscious choice by a municipality.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (internal quotation marks and citations omitted). Such deliberate indifference is only shown where the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307 (citing *Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1390). Notice is established "by proving the existence of a pattern of tortious conduct," or otherwise it may be found by "highly predictable or plainly obvious consequence[s] of a municipality's action or inaction." *Id.* at 1308 (citing *Brown*, 520 U.S. at ---, 117 S.Ct. at 1391; *Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10). Failure to train is "the "most tenuous" theory that can support municipal liability because it is "nebulous" and "removed from the constitutional violation." *Connick*, 563 U.S. at 61. One incident of misconduct or unconstitutional action does not give rise to impose municipal liability. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

The Complaint does not contain any facts that support a pattern of constitutional violations by untrained employees. In fact, the Complaint is devoid of any facts about the LPD's training program for handling the recording of officer activities; that the training that was provided and/or received by the Defendant Officers was inadequate or improper; nor are their facts plead that establish a pattern of

constitutional violations that rise to the level of showing deliberate indifference. Plaintiff's wholly conclusory allegations do not state a claim for failure to train and/or supervise and "merely pleading labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of any factual enhancement will not suffice." *Iqbal*, 556 U.S. at 679. Without any reference to these facts, judgment is warranted for Defendant.

Plaintiff contends that the City failed to properly train and supervise its officers on its Policy on recording police activity and handling Plaintiff's presence at the scene while observing and recording. (Doc. 1, ¶ ¶ 283, 285). And the City failed to properly train and supervise officers on its Policy on alternative non-violent tactics to decrease the intensity of the situation, improve decision-making, improve communication, reduce the need for force and increase voluntary compliance. *Id.* at ¶ 286. Aside from conclusory statements, that the City failed to train and supervise officers on its Policy, there are no facts pled to support this contention.  More importantly, the Complaint does not allege facts that the LPD Policy was the "moving force" behind the alleged constitutional violation.  *Dalcour v. City of Lakewood,* 492 F. App'x 924, 930 (10th Cir. 2012).  Plaintiff concedes that on May 19/20, 2023, police responded to a shoot-out that resulted in a stand-off with an armed suspect. (Doc. 1, ¶¶ 54, 55, 57).  Plaintiff also admits that those living in the neighborhood were advised to shelter in place. *Id.* ¶61. While difficult to follow, the Complaint details Plaintiff's movement throughout the area – from public to private property and that his arrest was due to failure to follow directions from the Defendant Officers.  The Complaint does not state facts that support a failure to train or supervise with regard to the recording of police activity in public or that there was a custom or policy of the LPD not to train officers as to Department policies. Instead, as is prevalent throughout the Complaint, Plaintiff simply makes self-serving conclusory statements that the City failed to properly train and supervise officers on its policies (Doc. 1, ¶¶ 285, 286), and generally avers that the City owes a duty of care to hire and retain and supervise "competent, law-abiding officers, as well as to enact policies he ensure that officers do not arrest citizens because of bias or without probable cause or use excessive force against civilians." *Id.* ¶ 288. These blanketed allegations do not state facts

that Courts have found support claims that the City had an unconstitutional policy, custom or practice to impose liability pursuant to *Monell*.

The conclusory allegations are present throughout the initial paragraphs of the Sixth Cause of Action (paragraphs 257-260). Specifically, these paragraphs appear to have been selectively taken from another complaint filed by Plaintiff's counsel against the City (Case No.: 5:24-cv-04034-JWB, Doc. 6) as they discuss de-escalation responsibilities of the Defendant Officers and moving to 'the third level of force.' (Doc. 1, ¶¶ 250-260). The 70-page Complaint is devoid of any reference to a City policy regarding the levels of force and de-escalation. The Court should disregard these allegations. Subsequent allegations in the Sixth Cause of Action detail Plaintiff's actions that led to his detention and arrest (paragraphs 261-265). Plaintiff argues that officers 'swarmed' him and targeted him because he was a citizen journalist. Plaintiff then makes conclusory allegations that the Defendant Officers were negligent in failing to secure the scene and establishing a viable security perimeter; failing to protect Plaintiff and other citizens from entering and exiting the area; failing to effectively communicate with other agencies; failing to communicate internally at the scene; and failing to protect Plaintiff when he was forcibly detained. (Doc. 1, ¶ 273). The remainder of the Sixth Cause of Action are gratuitous conclusory allegations related to purported failures of officers on handling/responding to an active shooter scene, which are unrelated to Plaintiff and have no bearing on his arrest. (Doc. 1, ¶¶ 274 – 282).

Most importantly, Plaintiff's Complaint does not allege facts showing any connection – let alone a direct causal link – between a City policy and any allegedly unconstitutional conduct of the Officer Defendants. To the extent the Officer Defendants conduct in Plaintiff's arrest, resulted in any violation of Plaintiff's constitutional rights (which is denied), as stated previously, there is absolutely no connection between a policy of the City and the Officer Defendants' conduct herein. Plaintiff does not set forth facts that it was a policy of the City to provide inadequate training to officers regarding recording of police activity that then led to Plaintiff's arrest. Further, there are no facts asserted that a lack of training caused his arrest for felony interference with law enforcement. In fact, the Complaint concedes that the District

4951742

Attorney reached the same conclusion and charged Plaintiff with a level 9 felony for interference with law enforcement which case is currently pending in Douglas County District Court, Case No.: DG-2023-CR-000525. Therefore, it is illogical to conclude that a lack of training led to Plaintiff's arrest.

Plaintiff essentially asks the Court to assume that the Officer Defendants violated his constitutional rights and based on that assumption, they must not have been trained properly. This assumption is not sufficient to sustain a claim for failure to train or supervise against City under *Monell*.  As the Supreme Court held in *Connick v. Thompson,* "without notice that a course of training is deficient in a *particular respect*" decisionmakers cannot be liable for failure to train. 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (emphasis added). All of Plaintiff's claims arise from the singular event of his May 20, 2023, arrest, which does not provide facts showing a pattern of constitutional violations by City employees that is required to charge the City with knowledge that there was a failure to train or supervise their employees. To establish supervisory liability, a plaintiff must establish that (1) defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy, (2) the policy caused the alleged constitutional harm and (3) defendant acted with the state of mind required to establish the alleged constitutional deprivation. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). To allege an unconstitutional custom or policy, allegations of "a single incident of unconstitutional conduct is not enough." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1170 (10th Cir. 2009). Rather, plaintiff must show a "pattern of abuses." *Brown v. Reardon*, 770 F.2d 896, 901 (10th Cir. 1985).

Plaintiff's allegations, albeit lengthy, do not state a widespread policy or a pattern of similar misconduct that permitted officers to arrest in retaliation or to use excessive force  to impose liability against the City pursuant to *Monell*.  Plaintiff's conclusory allegation that the City 'ratified and approved' the actions of the Defendant Officers and that the officers continue to 'defend and justify their conduct' in Plaintiff's criminal proceedings (Doc. 1, ¶ 287) does not support a viable claim against the City. It is well established that municipal liability relies on the City's notice that acts were unconstitutional, and approval after the fact cannot support a ratification theory of liability. *See e.g., Lynch*, 786 F. App'x at

4951742

787; *see also Davis v. City of Tulsa, Okla.*, 380 F. Supp. 3d 1163, 1174 (N.D. Okla. 2019) ("The City's post-shooting review could not have been the direct cause of...the shooting that occurred before the review.").

There are no facts in the Complaint showing a policy of "deliberate indifference" which is required to support a claim against the City for failure to train and supervise. The Complaint does not contain any facts that the City "disregarded a known or obvious consequence of ["its] action," and the Complaint does not allege any facts of a causal connection between a policy and any allegedly unconstitutional conduct. *Connick*, 563 U.S. at 61. Plaintiff's Complaint comprises of a wholly conclusory statements arising from a single incident without any widespread pattern of similar conduct to impose liability. Plaintiff's claims against the City for failure to train or supervise should be dismissed with prejudice because he does not state a claim upon which relief may be granted. *Frank v. Kan. Dep't of Agric.*, No. 19-1054-JWB, 2019 WL 2393008 at*3 (D. Kan. June 6, 2019).

## V.  CONCLUSION

Plaintiff's Complaint fails to state a claim pursuant to 42 U.S.C. § 1983 against Defendant City of Lawrence, Kansas and dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

HINKLE LAW FIRM LLC
8711 Penrose Lane, Suite 400
Lenexa, Kansas 66219-8197
913-345-9205/ FAX: 913-345-4832


By:*/s/ Michelle R. Stewart*
    Michelle R. Stewart, mstewart@hinklaw.com   #19260
    Lindsey R. Freihoff, lfreihoff@hinklaw.com   #28560

ATTORNEYS FOR DEFENDANT THE CITY OF
LAWRENCE CITY COMMISSION

4951742

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned hereby certifies that on the 26th day of August, 2024, the foregoing *Memorandum in Support of Motion to Dismiss* was filed electronically with the Clerk of the US District Court for District of Kansas; and a service copy was served via ECF electronic notification on the following:

Linus L. Baker, #18197 (<u>linusbaker@prodigy.net</u>)
*Attorneys for Plaintiff*

      <u>  */s/ Michelle R. Stewart*   </u>
      ATTORNEYS FOR DEFENDANT THE CITY OF
      LAWRENCE CITY COMMISSION

4951742