IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF KANSAS

| | |
|---|---|
| Phillip Michael Eravi<br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>David McShane, in his individual<br>capacity et al<br>　　　　　　　　　　Defendants s | Case No. 5:24-cv-04042-DDC-RES |

**PLAINTIFF'S OPPOSITION TO CITY OF LAWRENCE MOTION TO DISMISS**

## Overview

This lawsuit is brought pursuant to 42 U.S.C. § 1983 alleging Fourth Amendment claims of unlawful seizure resulting from the plaintiff Michael Eravi's unreasonable arrest without probable cause by the defendants. Plaintiff Eravi also claims that the deprivations of his constitutional rights were the result of inadequate policies of and training by the defendants City of Lawrence. Plaintiff's Count I cause of action is an official capacity claim regarding the Lawerence Police Department recording policy essentially making a violation of the policy a crime. Count I contends the conduct of the defendant officer McShane, and the other individual defendants, was directly caused or contributed to by official policies, procedures, practices, customs, and usages or inadequate policies and procedures of the Lawrence Police Department. Count VI is an official capacity claim regarding failure to provide adequate training to defendant McShane, as well as the other individual defendants.

In short, the Complaint alleges (1) that constitutional violations were committed by Officers McShane, Shipley, Foster, and Twite; (2) that there was a moving force recording policy that caused the deprivations or a policy or custom of

1

failing to train or providing inadequate training that would have prevented those violations; and (3) a direct causal link between the policy or custom and the injury alleged. In its motion to dismiss (ECF 8) the City of Lawrence contends it cannot be liable for any connections to its recording policy or supervision and training of the defendants in this matter.

## Failure to Train and Supervise

Defendant's motion does not make a specific argument that there was no constitutional violation committed by defendant McShane or the other defendants. Mr. Eravi was engaged in constitutionally protected activity when he filmed police activity. Curiously, the defendant Lawrence cites First Amendment cases but none say that recording police is actually a crime. And then defendants omit reference to *Irizarry v. Yehia*, 38 F.4th 1282, 1287 (10th Cir. 2022) ("there is a First Amendment right to film the police performing their duties in public").[1]

Regarding *Monell* liability, a plaintiff must either allege a pattern of similar constitutional violations by untrained employees, or that this is one of the rare circumstances where despite such a pattern, the unconstitutional consequences of Defendant's failure to train are "highly predictable" and "patently obvious."[2]

Pertinent allegations of the Complaint alleges the Lawerence Police Department did not have sufficient policies or practices in place to guide officers in

---

[1] In *Izarry*, the Tenth Circuit held that the right to film police officers performing their duties in public was clearly established because six circuits had determined the right exists, even though the right was not clearly established in the Tenth Circuit.
[2] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019).

2

marking a police perimeter, or like McShane or Shipley, as to who to obey in terms of effectuating a detention or an arrest, or the factors they must consider when as to citizen press being present on private property filming the scene, and being told or not told certain things about the officers' statements, assurances, guidance, or instruction. Officers like McShane are inadequately trained and supervised not to detain or arrest individuals who are complying with the officer's statements. Consider these Complaint (ECF 1) allegations below:

- ¶92 Lawrence police officers know Mr. Eravi by sight, who he is, and what he does to attempt to help the community.

- ¶3 Plaintiff had been a long standing public irritant to this police force as a well-known citizen journalist who was doing what he routinely did – observe and video record law enforcement and a crime scene from a distance across the street from the crime scene. [3]

- ¶86 Police did not provide any notice to the public or do anything, prior to Mr. Eravi's encounter, that indicated that foot traffic was not permitted where Mr. Eravi was walking.

- ¶85 There was no crime scene tape placed, nor was any visible, tangible, perimeter ever established at the scene by officers, other than the armored vehicle parked in the driveway of 1951 Heatherwood Drive.

- ¶5 Defendant City Officer McShane undertook his initial stop of Mr. Eravi on this private property without reasonable suspicion, and nothing during the stop created even arguable probable cause to arrest him for any offense under Kansas law. Mr. Eravi was not trespassing. There had been no complaints by the apartment owner(s) as to Mr. Eravi's presence on the front yard of an apartment complex property.

- ¶25 Mr. Eravi was not engaged in any apparent or actual criminal activity when defendant McShane confronted and stopped Mr. Eravi, and Mr. Eravi remained either on sidewalk or grass yard of the apartment complex – all of which was

---

[3] *See Bustillos v. City of Artesia,* 591 F. Supp. 3d 1051, 1064 (D.N.M. Mar. 17, 2022) ("News-gathering protections of the First Amendment do not turn on professional credentials or status").

3

private property far from any parked vehicles. Mr. Eravi did not appear nervous when McShane began asking him questions, nor did he make any attempt to flee the scene. Instead, Mr. Eravi remained calm, and despite McShane's aggressive questioning and intimidating proxemics, Mr. Eravi remained steady and walking filming the scene and the confrontation.

- ¶118 Mr. Eravi turned around and headed back South and another unlit parked police vehicle was located on the other side of the street.

- ¶119 Lieutenant Unruh said to 'detain' and not arrest Mr. Eravi according to Unruh's body cam video.

- ¶120 Defendant Shipley later testified she did not hear her superior Lt. Unruh say to detain Mr. Eravi and further testified that even if she had heard this command she would have overridden Lt. Unruh's detain command.

- ¶121 Despite being told by Lt. Unruh to merely detain Mr. Eravi, defendant McShane ignored that command and arrested Mr. Eravi.

- ¶124 At no time was Mr. Eravi advised by any Lawrence police officer that he was in danger, in a crime scene perimeter, that police were attempting process of service, or that there was any likelihood of shots being fired.

- ¶126 Defendant McShane told Mr. Eravi he could walk and to just keep walking, but that McShane would assure Mr. Eravi's police protection and safety -- McShane would act as Mr. Eravi's protective shepherd (i.e. "cover him") indicating Mr. Eravi was still free to walk and would be escorted and always protected by that officer.

- ¶130 Moreover, this special duty upon defendant McShane required him to accurately convey to his supervisor defendant Shipley exactly what Mr. Eravi was doing in terms of his direction of travel and responses to defendant McShane – which defendant McShane was negligent in so doing.

- ¶132 "Defendants admitted that Mr. Eravi was told that "he was free to walk through the area" – despite purportedly later claiming (and did not say to Mr. Eravi) that doing so would place Mr. Eravi "in the line of fire" and placed Mr. Eravi "in harm's way." Defendants also later claimed that Mr. Eravi was free to walk as long as he would be "covered by an officer if he wanted to do so" and then claimed Mr. Eravi was told he "could not linger in the immediate vicinity."

- ¶133 Defendants admitted that Mr. Eravi "was free to remain in the general area" yet arrested him for being in the general area.

4

- ¶64 The scene did not appear dangerous to Mr. Eravi because there were no police present when he approached and no scene security tape. There were no defined and competently attended inner and outer security perimeters that were in place. They did not exist.

- ¶65 The defendants used force after Mr. Eravi had already begun to comply with the defendants vague and confusing statements. If anything, the plethora of video evidence show that Mr. Eravi was told confusing and contradictory statements throughout. On the night and morning in question, Mr. Eravi's presence as a citizen journalist immediately adjacent to apartment buildings across the street one-half football field length from a suspect's residence posed no threat to police.

- ¶66 In fact, Mr. Eravi was apparently arrested because he, according to the defendants, somehow posed a safety threat to himself by filming police and the area – and this because police continuously spotlighted him and created the very circumstance that drew attention to Mr. Eravi.

Defendants had a recording policy (ECF 1 ¶183) and officer response policy to that recording policy (¶184) which purports to make it a crime to record police activities because it violates those policies. The 425.3 policy refers to "interfere with the law enforcement activity" while the officer response policy in 425.4 is limited to "interfering with an investigation or it is believed that the recording may be evidence." Policy 423.4 refers to instructing officers to "give clear and concise warnings to individuals who are conducting themselves in a manner that would cause their recording or behavior to be unlawful. Accompanying the warnings should be clear directions on what an individual can do to be compliant; directions should be specific enough to allow compliance." Policy 423.3 provides an example that "rather than directing an individual to clear the area, an officer could advise the person that he/she may continue observing and recording from the sidewalk across the street."

The Lawrence Policy Department does not adequately train or supervise its officers on how to give "clear and concise warnings" as evidenced in the confusing and

conflicting statements made by defendant McShane to Mr. Eravi. The Lawrence Policy Department does not adequately train or supervise its officers on how to "give clear directions on what an individual can do to be compliant" as evidenced in the confusing and conflicting statements made by defendant McShane to Mr. Eravi. The Lawrence Policy Department does not adequately train or supervise its officers on what it means to "interfere with the law enforcement activity." The Lawrence Policy Department does not adequately train or supervise its officers that violating its recording policies is not a crime. The Lawrence Policy Department does not adequately train or supervise its officers as to the meaning of "observe," "record" or what "from the sidewalk across the street" means. The Lawrence Policy Department does not adequately train or supervise its officers as to "document in a report the nature and extent of the interference or other unlawful behavior and the warnings that were issued" particularly when the reports filed in this case contained false information, and documented "distractions" as "interference"[4] Lawrence Police Department did not "equip law enforcement officers with specific tools to handle recurring situations." *Board of County Com'rs. v. Brown,* 520 U.S. 397, 409 (1997). A reasonable juror could infer a causal relationship here because Mr. Eravi has adduced

---

[4] The plaintiff describes in no minor detail how the reports contained false information. The reports were "sometimes speculative pushing a narrative not based upon any personal knowledge or observation, then contradictory, misleading, and off times wholly false." ECF 1 ¶6. The purported "distractions" that officers thought was this crime of "interference" were after the decision to arrest Mr. Eravi. ECF 1 ¶129 ("In fact, all of the claimed "distractions" by the defendants only came after the decision was made to arrest Mr. Eravi and his actual arrest.  No officers were "distracted" or hindered from performing any official duty by Mr. Eravi's presence prior to his improper detention and arrest").

6

proof that training or better training would have "made a difference." *Forrest v. Parry,* 930 F.3d 93, 109 (2019).

Although the defendants deem it so, it is not a crime to violate the Lawrence Police Department recording policies.  The 425.4 Policy specifically contemplates that Mr. Eravi could "continue observing and recording from the sidewalk across the street" yet defendants either didn't understand what it meant to "observe," "record" or what "from the sidewalk across the street" meant or chose to disregard that guidance altogether.

There was no probable cause to suspect any crime and no probable cause to arrest the plaintiff Eravi for a crime.[5] He was told different, inconsistent, and then confusing things by defendant McShane while he was on private property.  And when he turned around going back towards Eravi's vehicle (information McShane did not relay), McShane was given two sets of conflicting instructions – detain and arrest. Defendant Shipley said that she would have disobeyed the detention instruction. Even if defendant McShane did not appreciate Mr. Eravi's rebuff,  "merely arguing with police officers about the propriety of their conduct … falls within the speech exception to [the interference with public duties statute] and thus does not constitute probable cause to arrest someone for interference." *Gorsky v. Guajardo,* No. 20-20084,

---

[5] *See Gonzalez v. Trevino,* 144 S. Ct. 1663, 1665-66 (2024) (noting that the no-probable-cause requirement does not apply if a plaintiff pleads "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been"). Comparators are not the only objective evidence of disparate arrest. *Id.* at 1667 ("demand for virtually identical and identifiable comparators goes too far"). The only requirement for evidence is that it be "objective." *Id.*

7

2023 WL 3690429, at *8 n.16 (5th Cir. 2023); *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (noting that arguing with officers is not an offense). "A person approached by law enforcement is entitled to ignore his interrogator and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). At the time of the events in question, it was clearly established that a Lawrence City police officer may not use force on Mr. Eravi who is complying with a command. *See Newman v. Guedry*, 703 F.3d 757, 761-64 (5th Cir. 2012) (objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance").

This is not the first incident regarding the Lawrence Police Department policies of arrest and excessive use of force. *See Anthony Lee Kennon v Daniel Ashley et al* Case No. 5:24-cv-04034-JWB-BGS (D.Kan 2024); *See Calvo-Pino v. Weidl*, 514 F. Supp. 1321, 1327 (D. Kan. 2021) (plaintiffs suing Lawrence Police Department can "stack inference upon inference," to show a police department's unconstitutional custom or practice"). In *Calvo-Pino*, the court ruled a "pattern of similar unconstitutional conduct by untrained officers is not necessary" and a "complete lack of training on the Fourth Amendment standards that govern such conduct would predictably lead to constitutional violations." *Id.* at 1330.

### LPD Recording Policy

In addition to the above allegations, the Complaint alleges these other pertinent facts:

- ¶189. Defendants did not give clear and concise warnings to Mr. Eravi. Defendants did not warn Mr. Eravi that he would be arrested.

8

- ¶4 Mr. Eravi was in a public forum, on private property, wanted to be left alone, continuing to walk casually, neither stopping nor breaking into a run that early morning.  Mr. Eravi was merely carrying his phone which was recording.  He did not carry any weapon of any kind.

- ¶179 Plaintiff Eravi was video recording at all times in a public forum, and then on private property accessible to the public.

- ¶181 The Lawrence Police Department Policy functions as a prior restraint to protected speech, is biased against the exercise of protected speech, and builds into the Department systemic malice and prejudice to individuals who photograph or videotape police activities.

- ¶182 The Policy does not target or similarly limit individuals who witness, without recording, the same police presence or activities. But if the citizen is recording police presence and activities, the Policy empowers its officers to engage in limiting First Amendment conduct simply because the citizen is recording.

- ¶183 Pursuant to the Lawrence Police Department Policy Manual 425.3 ("RECORDING LAW ENFORCEMENT ACTIVITY") it states:

> Members of the public who wish to record law enforcement activities are limited only in certain aspects.
> (a) Recordings may be made from any public place or any private property where the individual has the legal right to be present.
> (b) Beyond the act of photographing or recording, individuals may not interfere with the law enforcement activity. Examples of interference include, but are not limited to:
> 1. Tampering with a witness or suspect.
> 2. Inciting others to violate the law.
> 3. Being so close to the activity as to present a clear safety hazard to the officers.
> 4. Being so close to the activity as to interfere with an officer's effective communication with a suspect or witness.
> (c) The individual may not present an undue safety risk to the officer, him/herself or others.

- ¶184 Policy 425.4 ("OFFICER RESPONSE") states:

> Officers should request that a supervisor respond to the scene whenever it appears that anyone recording activities may be interfering with an investigation or it is believed that the recording may be evidence. If practicable, officers should wait for the supervisor to arrive before taking enforcement action or seizing any cameras or recording media. Whenever practicable, officers or supervisors should give clear and concise warnings to individuals who are conducting themselves in a manner

> that would cause their recording or behavior to be unlawful. Accompanying the warnings should be clear directions on what an individual can do to be compliant; directions should be specific enough to allow compliance. For example, rather than directing an individual to clear the area, an officer could advise the person that he/she may continue observing and recording from the sidewalk across the street. If an arrest or other significant enforcement activity is taken as the result of a recording that interferes with law enforcement activity, officers shall document in a report the nature and extent of the interference or other unlawful behavior and the warnings that were issued.

The plaintiff has plausibly alleged a "direct causal link between the policy or custom and the injury alleged." *Waller* at 1284. Even if no individual liability was being asserted, *Monell* liability as to the City of Lawrence has been alleged because of the combined acts and omissions of these individuals acting under the policy and custom of this recording policy. *See Lucas v. Turn Key Health Clinics, LLC,* 58 F.4th 1127, 1144 (10th Cir. 2023).[6] While the "acts or omissions of no one employee may violate an individual's constitutional rights" the "combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Crowson v. Washington Cnty. Utah,* 983 F.3d 1166, 1186 (10th Cir. 2020).

### BECAUSE THE PROPOSED AMENDED COMPLAINT CONTAINS PAGES OF GREAT DETAIL DOES NOT MEAN IT IS UNINTELLIGIBLE

Last, the plaintiff addresses the defendant's unintelligible argument. Despite briefing its motion, the defendant claims the Complaint contains a too many pages of

---

[6] *See e.g.* ¶10 ("Lawrence City Officers Meagan Shipley, Joshua Doncouse, Amaury Collado, Grant Foster, Steven Koenig, Nicholas Pate, Charles Smyser, Austin Twite, Adam Welch, Adam Zarnowiec, Hayden Fowler, and Noah Pena conspired to provide misleading false facts aimed at providing a false narrative justifying each defendant's actions as they described in their incident reports and testimony given in the Booking 23-01353 and case no. DG-2023-CR-000525").

factual and visual depictions – and therefore violates Rule 8. But being specific in detail or reaching a certain page number is not any trigger point. Rather, defendants must demonstrate that no defendant can "respond, even with a simple denial, in good faith or without prejudice to itself." *Sefton v. Jew*, 204 F.R.D. 104, 106 (W.D. Tex. 2000).

There are multiple actors in this lawsuit. The plaintiff has utilized technology to insert video snapshots harvested from the videos which is important visually for this Court. And clearly these defendants are complaining about questions that can be clarified in discovery. *Daniels v. City of Philadelphia,* No. 16-4270, 2017 WL 25382, at *5 (E.D. Pa. Jan. 3, 2017) ("The discovery process will help sort out whether Defendant police officers used excessive force when they arrested Daniels").

Moreover, despite its too-many-page argument, this defendant has not filed a motion for more definite statement. "Requiring a more definite statement is appropriate when addressing unintelligible or confusing pleadings." *Suede Grp., Inc. v. S Grp., LLC,* No. CIV.A. 12-2654-CM, 2013 WL 183752, at *1 (D. Kan. Jan. 17, 2013). But this defendant does not point to anything in the Complaint that it contends is unintelligible. As Judge Toby Crouse ruled, "defendants argument is not that the Amended Complaint is impossible to respond to, but rather that it is too long and includes legal argument." *Baker v Watson*, 23-cv-04022-TC-TJJ, p.2 (ECF 19) (June 14, 2023). As Judge Crouse pointed out in denying the motion, the proposed Amended Complaint "specifically alleges both the legal violations and the remedies being sought." "These allegations are sufficient to permit Defendants the opportunity to

11

formulate a response." *Id. See Norwood v. United Parcel Serv., Inc.,* No. 19-2496-DDC-JPO, 2020 WL 5802078, at *19 (D. Kan. Sept. 29, 2020); *Advantage Homebuilding, LLC v. Assurance Co. of Am.,* No. 03-2426-KHV, 2004 WL 433914, at *1 (D. Kan. March 5, 2004) (same analysis).

Defendants know there is an abundance of video evidence but do not refer the Court to view any of it in their memorandum. This is for obvious reasons because the videos support plaintiff Eravi's allegations and do not contradict them. At the motion to dismiss stage, any "ambiguities in the [video snapshots] footage" favor the plaintiff. *Baker v. City of Madison*, 67 F.4th 1268, 1277-78 (11th Cir. 2023) (concluding that video should be considered when reviewing the pleadings *de novo*).[7]

## CONCLUSION

The plaintiff Eravi has here demonstrated that his Complaint alleges sufficient facts – with significant detail – to create a nexus between the defendant Officers McShane, Shipley, Foster, and Twite's unconstitutional conduct and the failure to train/inadequate training and between their respective conduct and the policies, procedures, practices, customs, and usages or absent/inadequate policies and procedures for which the moving defendants, as official policy makers and final decision makers are responsible. Mr. Eravi has alleged facts from which it could be

---

[7] *See also Scott v. Harris*, 550 U.S. 372 (2007), where the Supreme Court reviewed the denial of qualified immunity on summary judgment and rejected the district and appellate courts' reliance on a "version of events" that was "utterly discredited by the record," including video evidence. *Id.* at 380. *Scott* held that courts "should have viewed the facts in the light depicted by [a] videotape" that "captured the events in question." *Id.* at 381.

concluded that a moving force behind the constitutional deprivations came from the Lawrence Police Department recording policies.

| Certificate of Service | /s/Linus L. Baker |
|---|---|
| | Linus L. Baker, KS 18197 |
| The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system. | 6732 West 185th Terrace |
| | Stilwell, KS  66085-8922 |
| | Telephone:  913.486.3913 |
| | Fax:            913.232.8734 |
| /s/Linus L. Baker | E-Mail: linusbaker@prodigy.net |
| Attorney for the plaintiff | Attorney for the plaintiff |